**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

NICOLE KESTEN and SCOTT KESTEN, on behalf of themselves and others similarly situated,

Plaintiffs,

v.

OCWEN LOAN SERVICING, LLC:
FEDERAL NATIONAL MORTGAGE ASS'N;
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; and DOES 1-10,

Defendants.

**JURY DEMANDED**

**COMPLAINT – CLASS ACTION**

**INTRODUCTION**

1. Plaintiffs Nicole Kesten and Scott Kesten bring this action to secure redress for improper mortgage servicing practices. Plaintiffs allege violation of the Truth in Lending Act, 15 U.S.C. §1601 et seq. ("TILA"), and implementing Federal Reserve Board Regulation Z, 12 C.F.R. part 226, the Cranston Gonzalez amendments to the Real Estate Settlement Procedures Act, 12 U.S.C. 2605 ("RESPA"), and the Illinois Consumer Fraud Act, 815 ILCS 505/2 ("ICFA"), and breach of contract.

**JURISDICTION AND VENUE**

2. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 (general federal question), 1337 (interstate commerce), and 15 U.S.C. §1640 (TILA). Defendants transact business in the District and are deemed to reside here.

**PARTIES**

3. Plaintiffs Nicole Kesten and Scott Kesten are husband and wife and own and reside in a home (condominium unit) in Skokie, Illinois.

4. Defendant Federal National Mortgage Association ("FNMA") is a corporation with offices at 1 S. Wacker Drive, Suite 1400, Chicago, IL 60606-5600.

5. Defendant Mortgage Electronic Registration Systems, Inc. ("MERS") is a

Delaware corporation which does business in Illinois. Its registered agent and office is Genpact Registered Agent Inc., 1901 East Voorhees Street, Ste. C, Danville, IL 61834.

6. Defendant Ocwen Loan Servicing, LLC ("Ocwen") is a limited liability company organized under Delaware law with offices at 1661 Worthington Road, Suite 100, West Palm Beach, FL 33409. It does business in Illinois, servicing thousands of mortgage loans in the Chicago metropolitan area. Its registered agent and office is Illinois Corporation Service Co., 801 Adlai Stevenson Drive, Springfield, IL 62703.

7. Defendants Does 1-10 are any persons or entities who have or claim an interest in plaintiffs' loan, other than FNMA and Ocwen.

## FACTS RELATING TO PLAINTIFFS

8. In March 2007, plaintiffs obtained two mortgage loans secured by their home from now-defunct Taylor, Bean & Whittaker Mortgage, one for $276,000 and one for $92,000.

9. The $276,000 loan was an adjustable rate loan on which only interest was initially payable. A copy of the note is attached as Exhibit A. A copy of the mortgage is attached as Exhibit B. The interest rate for the initial period was 6.875%.

10. The $276,000 loan has, for the last several years, including the entire period from April 1, 2010 to the present, been serviced by Ocwen.

11. The legal holder of the mortgage is and always has been MERS.

12. On information and belief, the $276,000 loan is beneficially owned by FNMA, and has been throughout the period from April 1, 2010 to the present.

13. Plaintiffs have never been formally notified of who the beneficial owner of their loan is.

14. On information and belief, Ocwen was acting as servicing agent for the owner of the loan during that period.

15. Because plaintiffs were not formally notified of the beneficial owner of their loan, Ocwen is acting as agent for a partially disclosed principal.

16. The $92,000 loan is serviced by Harris Bank.

17. The $92,000 loan has a fixed interest rate of 8.5%.

18. Effective May 1, 2010, the interest rate on plaintiffs' $276,000 loan should have been reduced, by its terms, to 3.125%. Effective November 1, 2010, the interest rate on the $276,000 loan should have been changed, by its terms, to 3.25%. In each case, corresponding changes in the monthly payment should have been made.

19. Ocwen, as the servicer, was responsible for making these changes.

20. Ocwen admittedly failed to reduce the interest rate, continuing to charge plaintiffs 6.875% interest.

21. Unaware of the fact that the interest rate should have been adjusted downward, plaintiffs applied for loan modifications. Plaintiffs' modification applications should have caused Ocwen to review plaintiffs' loan documents and realize its error. Instead, Ocwen denied plaintiffs' applications, and refused to reduce the interest rate.

22. As a result, plaintiffs were overcharged. The difference between the interest that was charged and the interest that should have been charged is $10,113.06.

23. On or about April 19, 2011, Ocwen sent plaintiffs the letter attached as Exhibit C.

24. Exhibit C was the first notice plaintiffs had of the problem with their loan.

25. Previously Ocwen had sent plaintiffs monthly statements which misrepresented the interest rate and payment amount. Examples are attached as Exhibit D.

26. Exhibit C does not rectify the overcharge, in that a credit in April 2011 of amounts overpaid a year previously does not account for the time differential. Any credit should have been given as of the date of each overcharge.

27. Furthermore, giving a credit is inconsistent with the terms of the note and mortgage, which only mandate interest payments during the initial period. Plaintiffs preferred to get their money back and apply it to pay down the higher-rate $92,000 loan.

28. By letter of May 2, 2011 (Exhibit E), plaintiffs requested Ocwen to return

the overcharge. Plaintiffs subsequently resent the same communication to Ocwen (Exhibit F).

29. By letter of May 19, 2011 (Exhibit G), Ocwen acknowledged receipt of the request.

30. Bv letter of July 8, 2011 (Exhibit H), Ocwen refused to return the overcharge. Ocwen also failed to provide any explanation or justification of its actions.

31. Along with sending Exhibits E and F, plaintiff also attempted to resolve the problem by phone. Mr. Kesten estimates that he called Ocwen at least six times in an attempt to get them to return the overcharge to him. He also hired an attorney to contact Ocwen and attempt to get his money back. The attorney was unable to get through to a person at Ocwen who was willing to refund plaintiff's money. At one point, the attorney was given two phone numbers which were allegedly for higher up people at Ocwen who might be able to help resolve plaintiff's problem. Instead, one of the numbers turned out to be a fax machine, and the other was only answered by a voice mail system. The attorney left messages which were never returned by anyone at Ocwen.

32. On information and belief, based on public statements by Ocwen executives, Ocwen acquired servicing of large numbers of loans that were originated by Taylor, Bean & Whittaker.

33. Many of these loans were adjustable rate interest-only loans similar to plaintiffs' loan. Adjustable rate interest-only loans were popular in the period immediately preceding the collapse of the mortgage market, and Taylor, Bean & Whittaker made many such loans.

34. On information and belief, Ocwen attempted to service these loans without acquiring or reviewing the loan documents, with the result that there were problems with Ocwen servicing the loans inconsistently with the loan documents. E.g., order denying summary judgment in *Ocwen v. Geuder*, 10 C 50198 (N.D.Ill., Aug. 1, 2011) (Exhibit I).

35. On information and belief, Ocwen made the same errors that occurred with plaintiffs' loan with numerous other adjustable rate loans.

## COUNT I – TRUTH IN LENDING ACT – CLASS CLAIM

36. Plaintiffs incorporate paragraphs 1- 35.

37. The owner(s) of the loan (through its agent Ocwen) violated Regulation Z, 12 C.F.R. 226.20(c), by failing to provide accurate notice 25 to 120 calendar days before a payment at a new level was due.

38. Section 226.20(c) provides:

> **(c) Variable-rate adjustments. An adjustment to the interest rate with or without a corresponding adjustment to the payment in a variable-rate transaction subject to §226.19(b) is an event requiring new disclosures to the consumer. At least once each year during which an interest rate adjustment is implemented without an accompanying payment change, and at least 25, but no more than 120, calendar days before a payment at a new level is due, the following disclosures, as applicable, must be delivered or placed in the mail:**
>
> **(1) The current and prior interest rates.**
>
> **(2) The index values upon which the current and prior interest rates are based.**
>
> **(3) The extent to which the creditor has foregone any increase in the interest rate.**
>
> **(4) The contractual effects of the adjustment, including the payment due after the adjustment is made, and a statement of the loan balance.**
>
> **(5) The payment, if different from that referred to in paragraph (c)(4) of this section, that would be required to fully amortize the loan at the new interest rate over the remainder of the loan term.**

39. Plaintiffs and the members of the class defined below were damaged as a result.

## CLASS ALLEGATIONS

40. Pursuant to Fed.R.Civ.P. 23(a) and (b)(3), plaintiffs bring suit on behalf of a class.

41. The class consists of (a) all persons (b) whose correspondence address is the same as that of the mortgaged property (c) whose adjustable rate mortgage loan was serviced by Ocwen (d) and owned by MERS or FNMA (e) whose payments were scheduled to change at any time during the year prior to the filing of this action (f) but were not changed at the correct

time.

42. On information and belief, the number of class members is such that joinder of all members is impracticable.

43. There are questions of law and fact common to the class, which common questions predominate over any questions relating to individual class members. The predominant common questions include:

a. Whether Ocwen failed to adjust its adjustable rate loans;

b. Whether such failure results in violation of the Truth in Lending Act and Regulation Z;

c. The appropriate damages.

44. Plaintiffs' claim is typical of the claims of the class members. All are based on the same factual and legal theories.

45. Plaintiffs will fairly and adequately represent the class members. Plaintiffs have retained counsel experienced in class actions and consumer credit litigation.

46. A class action is superior for the fair and efficient adjudication of this matter, in that:

a. Individual actions are not economically feasible;

b. Members of the class are likely to be unaware of their rights;

c. Congress intended class actions to be the principal enforcement mechanism under the TILA.

WHEREFORE, the Court should enter judgment in favor of plaintiff and the class and against defendants for:

(1) Statutory damages;

(2) Actual damages;

(3) Attorney's fees, litigation expenses and costs of suit;

(4) Such other and further relief as the Court deems proper.

**COUNT II – CRANSTON GONZALES ACT – INDIVIDUAL CLAIM**

47. Plaintiffs incorporate paragraphs 1- 35.

48. This claim is against Ocwen.

49. Exhibits E and F are each a "qualified written request" as defined in the Cranston-Gonzales amendment to RESPA, 12 U.S.C. §2605(e).

50. In violation of its obligations under the Cranston-Gonzales amendment, Ocwen failed to take corrective action within 60 business days.

51. Plaintiffs have been injured as a result, in that they have been unable to apply their overpayment as they desire. Plaintiffs preferred to apply the money to their second mortgage, which had a substantially higher interest rate. Plaintiffs also expended time and energy attempting to get Ocwen to resolve their problem, and paid an attorney to attempt to resolve the problem, after plaintiffs could not resolve the problem on their own.

52. The Cranston-Gonzales amendment to the Real Estate Settlement Procedures Act, 12 U.S.C. §2605(e), provides:

> **(e) Duty of loan servicer to respond to borrower inquiries.**
>
> **(1) Notice of receipt of inquiry.**
>
> **(A) In general. If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.**
>
> **(B) Qualified written request. For purposes of this subsection, a qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that–**
>
> **(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and**
>
> **(ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer**

**regarding other information sought by the borrower.**

**(2) Action with respect to inquiry. Not later than 60 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall–**

**(A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);**

**(B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes–**

**(i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and**

**(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or**

**(C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes--**

**(i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and**

**(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.**

**(3) Protection of credit rating. During the 60-day period beginning on the date of the servicer's receipt from any borrower of a qualified written request relating to a dispute regarding the borrower's payments, a servicer may not provide information regarding any overdue payment, owed by such borrower and relating to such period or qualified written request, to any consumer reporting agency (as such term is defined under section 603 of the Fair Reporting Act [15 USC §1681a]).**

WHEREFORE, plaintiffs request that the Court enter judgment in favor of the plaintiffs and against Ocwen for:

(1) Compensatory damages;

(2) Statutory damages;

(3) Attorney's fees, litigation expenses and costs of suit;

(4) Such other or further relief as the Court deems proper.

**COUNT III – BREACH OF CONTRACT – CLASS CLAIM**

53. Plaintiffs incorporate paragraphs 1 - 35.

54. This claim is against all defendants.

55. The owner(s) of the loan (through its agent Ocwen) breached the note and mortgage by failing to adjust the interest rate and payment amount and overcharging plaintiffs.

56. Plaintiffs and the members of the class defined below were damaged as a result.

**CLASS ALLEGATIONS**

57. Pursuant to Fed.R.Civ.P. 23(a) and (b)(3), plaintiffs bring suit on behalf of a class.

58. The class consists of (a) all persons (b) whose adjustable rate mortgage loan was serviced by Ocwen (c) whose payments and interest rate were scheduled to be reduced at any time during ten years prior to the filing of this action (d) but whose payments and interest rate were not changed at the correct time.

59. On information and belief, the number of class members is such that joinder of all members is impracticable.

60. There are questions of law and fact common to the class, which common questions predominate over any questions relating to individual class members. The predominant common questions include:

a. Whether Ocwen failed to adjust its adjustable rate loans;

b. Whether such failure constitutes a breach of contract;

c. The liability of the owners of the loan and Ocwen;

d. The appropriate damages.

61. Plaintiffs' claim is typical of the claims of the class members. All are based on the same factual and legal theories.

62. Plaintiffs will fairly and adequately represent the class members. Plaintiffs have retained counsel experienced in class actions and consumer credit litigation.

63. A class action is superior for the fair and efficient adjudication of this matter, in that:

a. Individual actions are not economically feasible;

b. Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of plaintiffs and the class and against defendants for:

(1) Actual damages;

(2) Costs of suit;

(3) Such other and further relief as the Court deems proper.

**COUNT IV -- ILLINOIS CONSUMER FRAUD ACT – CLASS CLAIM**

64. Plaintiffs incorporate paragraphs 1 - 35 above.

65. This claim is against all defendants.

66. Ocwen engaged in unfair and deceptive acts and practices, in violation of §2 of the Illinois Consumer Fraud Act, 815 ILCS 505/2, by:

a. Failing to adjust the interest rate and payment amount;

b. Overcharging plaintiffs and others similarly situated;

c. Sending plaintiffs and others similarly situated monthly statements demanding excessive amounts and misrepresenting the applicable interest rate and payment amounts;

d. Unilaterally applying the overcharge as a principal reduction once it was discovered, without giving plaintiffs and others similarly situated the option to make their own decision about how best to use the money.

67. Ocwen's principal(s) are liable for such conduct.

68. Plaintiffs and the members of the class defined below have been injured as a result.

69. Ocwen engaged in such conduct in the course of trade and commerce.

**CLASS ALLEGATIONS**

70. Pursuant to Fed.R.Civ.P. 23(a) and (b)(3), plaintiffs bring suit on behalf of a class.

71. The class consists of (a) all persons with Illinois addresses (b) whose adjustable rate mortgage loan was serviced by Ocwen (c) whose payments and interest rate were scheduled to be reduced at any time during the three years prior to the filing of this action (d) but whose payments and interest rate were not changed at the correct time.

72. On information and belief, the number of class members is such that joinder of all members is impracticable.

73. There are questions of law and fact common to the class, which common questions predominate over any questions relating to individual class members. The predominant common questions include:

a. Whether Ocwen failed to adjust its adjustable rate loans;

b. Whether Ocwen sent monthly statements that were false and demanded excessive amounts;

c. Whether such failure constitutes an unfair or deceptive practice;

d. The liability of the owners of the loan and Ocwen;

e. The appropriate damages.

74. Plaintiffs' claim is typical of the claims of the class members. All are based on the same factual and legal theories.

75. Plaintiffs will fairly and adequately represent the class members. Plaintiffs have retained counsel experienced in class actions and consumer credit litigation.

76. A class action is superior for the fair and efficient adjudication of this

matter, in that:

a. Individual actions are not economically feasible;

b. Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of plaintiffs and the class and against defendants for:

(1) Actual damages;

(2) Punitive damages;

(3) Attorney's fees, litigation expenses and costs of suit;

(4) Such other and further relief as the Court deems proper.

/s/ Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Tara L. Goodwin
EDELMAN, COMBS, LATTURNER
& GOODWIN, LLC
120 S. LaSalle Street, Suite 1800
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

**JURY DEMAND**

Plaintiffs demand trial by jury.

/s/ Daniel A. Edelman
Daniel A. Edelman

**NOTICE OF LIEN AND ASSIGNMENT**

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

/s/ Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
EDELMAN, COMBS, LATTURNER
& GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)