**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| NICOLE KESTEN and SCOTT KESTEN, on behalf of themselves and others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 11 C 6981 |
| OCWEN LOAN SERVICING, LLC; FEDERAL HOME LOAN MORTGAGE CORP.; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; and DOES 1-10, | ) ) ) ) ) ) | |
| Defendants. | ) | |

<u>MEMORANDUM OPINION AND ORDER</u>

JAMES F. HOLDERMAN, Chief Judge:

On October 4, 2011, Plaintiffs Nicole Kesten and Scott Kesten filed a class action complaint alleging that the Federal Home Loan Mortgage Corporation ("Freddie Mac"), Ocwen Loan Servicing, LLC, ("Ocwen"), and Mortgage Electronic Registration Systems, Inc. ("MERS"), violated the Truth in Lending Act, 15 U.S.C. §§1601-1667f ("TILA") (Count I), Illinois common law (Count III), and the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2 ("ICFA") (Count IV). The complaint also alleges that Ocwen violated the Cranston-Gonzalez amendments to the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605 ("RESPA") (Count II).

Pending before the court is Ocwen's motion to dismiss Counts I, II, III, and IV (Dkt. No.

41.), and Freddie Mac's motion to dismiss Counts I, III, and IV (Dkt. No. 55).[1] For the reasons stated below, both motions are granted in part and denied in part.

## BACKGROUND

The following facts are taken from the Kestens' First Amended Complaint (Dkt. No. 29 ("Am. Compl.")), filed November 17, 2011. In March 2007, the Kestens obtained two mortgage loans secured by their home in Skokie, Illinois. (*Id.* ¶ 3, 8.) One of the loans was for $92,000 and has a fixed interest rate of 8.5%. (*Id.* ¶ 8, 17.) The other loan was for $276,000 and was a hybrid adjustable rate mortgage; that is, it had an initial interest rate of 6.875% until May 1, 2010, after which the interest rate varied every six months based on the LIBOR index. (*Id.* ¶ 9, 18; *see also id.* Ex. A ¶ 4.) Legal title of the $276,000 loan has always been held by MERS, but Freddie Mac has been the beneficial owner of the $276,000 since April 1, 2010. (*Id.* ¶¶ 11-12.) Ocwen has been the servicer of the $276,000 loan since April 1, 2010. (*Id.* ¶ 14.)

On May 1, 2010, the interest rate on the $276,000 loan should have been reduced, by its terms, to 3.125%, and on November 1, 2010, it should have been adjusted to 3.25%. (*Id.* ¶ 18.) Ocwen failed to make the change. (*Id.* ¶ 20.) Consequently the Kestens were overcharged $10,113 on their mortgage payments. (*Id.* ¶ 22.) Nobody noticed the error until April 19, 2011, when Ocwen sent the Kestens a letter stating that it had performed a routine audit on the Kestens' account and had noticed the error. (*Id.* Ex. C.) That letter also informed the Kestens that the $10,113 overcharge would be "refunded to you separately." (*Id.*). On May 2, 2011, Scott Kesten sent Ocwen a letter acknowledging that a payment of $10,113 had been made to his account, but calling that payment

---

[1] MERS also filed a motion to dismiss all counts against it (Dkt. No. 38), after which the parties filed a stipulation dismissing the complaint against MERS without prejudice. Accordingly, MERS's motion to dismiss is terminated as moot.

"not authorized" because "Ocwen does not have the authority to withhold overcharged funds from me, the client." (*Id.* Ex. E.) Mr. Kesten instructed Ocwen that the $10,113 amount be returned to him immediately and "no later than May 23, 2011." (*Id.*)

Ocwen acknowledged receipt of Scott Kesten's letter on May 19, and responded on July 8, 2011. (*Id.* Exs. G, H.) In its response, Ocwen stated that "we will not be able to process your request in regard to refund the payment in question," but provided no other explanation of why it would not be able to process the request. (*Id.* Ex. H.) Despite additional phone calls from the Kestens and their attorney, Ocwen continued to refuse to refund the overpayment. (*Id.* ¶ 31.)

## LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "include sufficient facts 'to state a claim for relief that is plausible on its face.'" *Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 903 (7th Cir. 2011) (quoting *Justice v. Town of Cicero*, 577 F.3d 768, 771 (7th Cir. 2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). In ruling on a Rule 12(b)(6) motion, the court "construe[s] the . . . [c]omplaint in the light most

favorable to Plaintiff, accepting as true all well-pleaded facts and drawing all possible inferences in his favor." *Cole*, 634 F.3d at 903.

## ANALYSIS

I.   TILA

In Count I of their complaint, plaintiffs allege that Ocwen and Freddie Mac violated 12 C.F.R. § 226.20(c), a regulation promulgated under TILA, by failing to provide proper notice that the interest rate on their loan was going to change on May 1, 2010, and on November 1, 2010. Section 226.20(c) provides that:

> At least once each year during which an interest rate adjustment is implemented without an accompanying payment change, and at least 25, but no more than 120, calendar days before a payment at a new level is due, the following disclosures, as applicable, must be delivered or placed in the mail . . . .

A.   Freddie Mac

Freddie Mac moves to dismiss the Kestens' TILA claim first on the ground that it is barred by TILA's statute of limitations, which requires all actions under TILA to be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). The Kestens should have received notice of the May 1, 2010, change by April 5, 2010, which is more than one year before the complaint was filed on October 4, 2011. The Kestens thus admit that their claim that Freddie Mac did not send notice of the May 1, 2010, change is barred. (Dkt. No. 62, at 4.)

The claim that Freddie Mac did not send notice of the November 1, 2010, change is within the limitations period, however. The Kestens should have received notice of the November 1, 2010, change by October 6, 2010, which is less than a year before they filed their complaint. Freddie Mac contends that the Kestens did not claim in their original complaint that they failed to receive notice of the November 1, 2010, change, but that argument is frivolous. The Complaint alleged that

> Effective May 1, 2010, the interest rate on plaintiffs' $276,000 loan should have been reduced, by its terms, to 3.125%. Effective November 1, 2010, the interest rate on the $276,000 loan should have been changed, by its terms, to 3.25%. In each case, corresponding changes in the monthly payment should have been made.

(Dkt. No. 1 ("Compl.") ¶ 18.) Later, it alleged that "[t]he owner(s) of the loan (through its agent Ocwen) violated Regulation Z, 12 C.F.R. 226.20(c), by failing to provide accurate notice 25 to 120 calendar days before a payment at a new level was due." (Compl. ¶ 37.) There is thus no doubt that the Kestens alleged a violation based on the lack of notice of the November 1, 2010, interest rate change. That claim is not time-barred.

Second, Freddie Mac contends that it cannot be vicariously liable for the failure of Ocwen, its loan servicer, to send the required notice. But Freddie Mac misunderstands the basis of the Kestens' claim, which is that Freddie Mac is directly liable, not vicariously liable.

Freddie Mac can be directly liable because the obligation to provide notice under § 226.20(c) belongs to the owner of the loan. Section 226.20(c) is somewhat ambiguous, in that it states in the passive voice that disclosures "must be delivered" without specifying who is to deliver them. In context, however, there can be no doubt that the obligation rests with the owner of the loan, as specified in 12 C.F.R.§ 226.17, which states that "[t]he creditor shall make the disclosures required by this subpart." A "creditor" is defined as the person "to whom the obligation is initially payable," 12 C.F.R. § 226.2(a)(17), but it is reasonable to assume that the creditor's obligations pass to a subsequent assignee of the loan. Indeed, the agency that promulgated § 226.20(c), the Board of Governors of the Federal Reserve System (the "Board"), interprets § 226.20(c) in this way. *See* 12 C.F.R. Pt. 226, Supp. I, Subpt. C ("This section [§226.20(c)] requires a creditor (or a subsequent holder) to provide certain disclosures in cases where an adjustment to the interest rate is made in a variable-rate transaction subject to § 226.19(b)."). The court must defer to an agency's interpretation

of its own regulation unless it is "plainly erroneous or inconsistent with the regulation." *Auer v. Robbins*, 519 U.S. 452, 461 (1997) (internal quotation marks omitted); *see also Cent. States Se. & Sw. Areas Pension Fund v. O'Neill Bros. Transfer & Storage Co.*, 620 F.3d 766, 774 (7th Cir. 2010). The agency's interpretation here is not plainly erroneous. Thus, the obligation to give the Kestens notice was Freddie Mac's, and Freddie Mac is liable if the Kestens did not receive notice.

Third, Freddie Mac contends that TILA does not provide for a private action to enforce § 226.20(c) against the assignee of a loan. TILA provides for private enforcement actions in 15 U.S.C. § 1640(a), which states that "any creditor who fails to comply with any requirement imposed under [Part B of Subchapter I of Chapter 41 of Title 15 ("Part B")] . . . with respect to any person is liable to such person." As an assignee of the mortgage, however, Freddie Mac is not a creditor under TILA's definition, which, again, includes only "the person to whom the debt arising from the consumer credit transaction is *initially* payable," 15 U.S.C. § 1602(f) (emphasis added). Section 1641, however, provides that "any civil action for a violation of [Subchapter I of Chapter 41 of Title 15 ("Subchapter I")] . . . which may be brought against a creditor may be maintained against any assignee of such creditor, only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement, except where the assignment was involuntary." Because § 1641 applies only to actions that may be brought against a creditor, a private action against an assignee must meet the requirements of both § 1640 and § 1641. In other words, (1) the action must be for a violation of Part B (and thus also for a violation of Subchapter I), (2) the violation must be apparent on the face of the disclosure statement, and (3) the assignment of the loan must have been voluntary.

Freddie Mac contends that the Kestens' action does not meet the first requirement, because the Kestens allege a violation of the regulations implementing TILA, not a violation of Part B. But Freddie Mac overlooks 15 U.S.C § 1602(y), which provides that within TILA, "[a]ny reference to any requirement imposed under [Subchapter I] or any provision thereof includes reference to the regulations of the Board under [Subchapter I] or the provision thereof in question." Consequently, § 1640(a)'s reference to "any requirement imposed under [Part B]" includes any requirements in regulations imposed under Part B. The Board derived the authority to impose § 226.20(c) from 15 U.S.C. § 1604, which is in Part A. Section 1604, however, grants the Board authority to "prescribe regulations to carry out the purposes of [Subchapter I]," including *Parts A and B*. A regulation carrying out the purpose of Part B can be said to be a regulation "under" Part B within the meaning of § 1602(y). Moreover, § 226.20(c) is such a regulation, because it furthers the purpose of Part B to ensure that commercial lenders provide proper disclosures in credit transactions. Accordingly § 226.20(c) is a regulation under Part B, § 1640 provides for a private action against creditors who violate regulations under Part B, and § 1641 provides for a private action against assignees who do the same. Consequently, the Kestens' action meets the first requirement.

The second requirement, that the violation be apparent on the face of the disclosure statement, is met also. In this case, the alleged violation is that the disclosure statement notifying the Kestens of the rate change did not exist. That violation is "apparent from the face of the disclosure statement," which is defined to include situations in which "the disclosure can be determined to be incomplete." 15 U.S.C. § 1641(e)(2)(A).

Finally, the third requirement is also met, because the parties do not dispute that the assignment to Freddie Mac was voluntary. Consequently, the Kestens can bring a private action to

enforce § 220.26(c) against Freddie Mac. Freddie Mac's motion to dismiss the Kestens' TILA count is denied.

> B.   Ocwen

As described above, a private action under TILA can be brought against creditors or their assignees. 15 U.S.C. §§ 1640-1641. A creditor under TILA, however, can only be "the person to whom the debt arising from the consumer credit transaction is initially payable," a definition excluding loan servicers like Ocwen. 15 U.S.C. § 1602(f). Servicers are also excluded from the definition of assignees "unless the servicer is or was the owner of the obligation." 15 U.S.C. § 1641(f)(1); *see also In re Ameriquest Mortg. Co. Mortg. Lending Practices Lit.*, MDL No. 1715, 2008 U.S. Dist. LEXIS 99240, at \*41 (N.D. Ill. Dec. 2, 2008) (stating that "a mortgage servicer has no liability for an assignor's actions under TILA"); *Lippner v. Deutsche Bank Nat'l Trust Co.*, 544 F. Supp. 2d 695, 699 (N.D. Ill. 2008) (holding that servicer not liable under TILA unless it had owned the loan in question).

Here, the Kestens do not allege that defendant Ocwen is or was the owner of the loan. Rather, they concede that "[t]he legal holder of the mortgage is and always has been MERS" (Am. Compl. ¶ 11.), and that the loan is "beneficially owned by [Freddie Mac], and has been throughout the period from April 1, 2010 to present." (*Id.* ¶ 12.) The Kestens contend that Ocwen should nonetheless be liable as a creditor under TILA because the Note defines a "Note Holder" as "anyone who takes this Note by transfer and who is entitled to receive payments under this Note," (*Id.* Ex. A ¶ 1) and because the Mortgage specifies that the loan servicer has the obligation to service the note (*Id.* Ex. B ¶ 20). The court fails to see why provisions of the Kestens' Note and Mortgage are relevant to the definition of "creditor" under TILA, which is limited to "the person to whom the debt

arising from the consumer credit transaction is initially payable," and makes no mention of servicers. 15 U.S.C. § 1602(f). Ocwen is thus not liable under TILA as a creditor.

The Kestens next argue that Ocwen is liable under an agency theory. That argument fails, however, because it is clear that "[i]t was not Congressional intent to allow plaintiffs to bring servicers to court under the doctrine of agency when the Act specifically states that servicers are not liable for damages." *Fullmer v. JP Morgan Chase Bank*, No. 09 C 1037, 2010 WL 95206, at *4 (E.D. Cal. Jan. 6, 2010).

The Kestens also contend that the TILA claim against Ocwen should not be dismissed because Ocwen is a necessary party under Federal Rule of Civil Procedure 19. Whatever the merit of that argument, it need not prevent the court from dismissing the TILA claim against Ocwen, because Ocwen will remain a party to this suit because of the RESPA and breach of contract claims. Therefore, the court will dismiss the Kestens' TILA claim against Ocwen.

II. RESPA

In Count II of the amended complaint, the Kestens allege that Ocwen violated RESPA by failing to take corrective action within 60 days of receiving a qualified written request. (Am. Comp. ¶ 50.) "RESPA is a consumer protection statute that regulates the real estate settlement process, including servicing of loans and assignment of those loans." *Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 680 (7th Cir. 2011). The Cranston-Gonzales National Affordable Housing Act amended RESPA by imposing additional obligations on loan servicers, including the obligation to respond to a borrower's "qualified written request." 12 U.S.C. § 2605(e). RESPA now requires a servicer to respond to such an inquiry within 60 days. 12 U.S.C. § 2605(e)(2). A servicer may respond in one of three ways: (1) a servicer may "make appropriate corrections in the account of the borrower,

including crediting any late charges or penalties, and transmit to the borrower written notification of such correction"; (2) a servicer may provide the borrower with a "written explanation or clarification that includes . . . a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer"; or (3) a servicer can provide "a written explanation or clarification that includes . . . information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer." 12 U.S.C. § 2605(e)(2).

The Kestens allege that after receiving their May 2, 2011, qualified written request, Ocwen "failed to take corrective action within 60 business days." (Am. Comp. ¶¶ 50-51.) Although Ocwen provided the Kestens with two written responses within 60 business days, the responses did not contain an explanation or clarification as to why the Kestens' request for a refund could not be processed. (Am. Compl. Exs. G, H.) Instead, Ocwen responded to the Kestens' request merely by asking the Kestens to "[p]lease be advised that we will not be able to process your request in regard to refund the payment in question." (Am. Compl. Ex. H.) That perfunctory response does not constitute a sufficient statement of reasons for Ocwen's actions, so it fails to satisfy any of the three ways a servicer may respond under RESPA. Taken as true, the Kestens' allegations state a claim under RESPA, and therefore Ocwen's motion to dismiss the RESPA claim is denied.

III.   Breach of Contract

Count III of the amended complaint alleges that "[t]he owner(s) of the loan (through its agent Ocwen) breached the note and mortgage by failing to adjust the interest rate and payment amount and overcharging plaintiffs." (Am. Comp. ¶ 55.)

To plead a breach of contract under Illinois law, a party must allege: "(1) the existence of

a valid and enforceable contract; (2) substantial performance of the contract; (3) breach of the contract; and (4) resultant damages." *Hickman v. Wells Fargo Bank*, 683 F. Supp. 2d 779, 791 (N.D. Ill. 2010); *see also TAS Distrib. Co. v. Cummins Engine Co.*, 491 F.3d 625, 631 (7th Cir. 2007).

Both Ocwen and Freddie Mac contend that Count III should be dismissed because the Kestens have not pleaded any actual damages. According to the defendants, Ocwen's decision to credit the overpayment to the Kestens' account made them whole, and there is thus no harm to the Kestens. The defendants' argument ignores two basic economic concepts: the time-value of money and liquidity. First, an account credit in April 2011 does not make up for the amount the Kestens were overcharged beginning in May 2010, because the Kestens could have earned interest if the money had been in their hands during the intervening period. Depriving the Kestens of the interest is a real harm. Second, an account credit is not the same as the cash the Kestens would have had if they were not overcharged, because it is less liquid. The Kestens can use cash however they wish, whereas they have no flexibility to reallocate the account credit to other uses. Here, the Kestens allege that they would have used the extra cash to pay down the higher-interest $92,000 loan. (Am. Compl. ¶ 27.) They allege that the defendants' breach of contract prevented them from doing so, and the extra expenses they incurred from their inability to pay down the higher-interest loan constitute real economic harm. Accordingly, the Kestens have sufficiently pleaded that they suffered damages from the alleged breach.

Ocwen additionally argues that the breach of contract claim against it fails as a matter of law because the Kestens did not allege sufficient facts to support Ocwen's liability under an agency theory. (Dkt No. 42, at 10.) The Kestens do not, however, contend that Ocwen is liable as an agent. (Dkt. No. 59, at 10-11.) Instead, they contend that defendant Ocwen was assigned certain obligations

under the contract that it failed to meet. (*Id.* at 10.) That theory is correct as a matter of law, for, as the Seventh Circuit has held, "[i]f an original mortgagee can be sued under state law for breach of contract, so may the partial assignee if he violates the terms of the part of the mortgage contract that has been assigned to him." *In Re Ocwen Loan Servicing, LLC Mortg. Servicing Lit.*, 491 F.3d 638, 645 (7th Cir. 2007) (holding a loan servicer liable for breach of contract when it breached the contract obligations assigned to it).

Although the Kestens' advance the assignment theory in their briefing, their amended complaint does not specifically refer to it, instead stating that "[t]he owner(s) of the loan (through its agent Ocwen) breached the note and mortgage." (Am. Compl. ¶ 55.) Nonetheless, "[t]he law does not require [a plaintiff] to plead any legal theories," so a court should ask "whether any set of facts consistent with the complaint would give him a right to recover, no matter what the legal theory." *Small v. Chao*, 398 F.3d 894, 898 (7th Cir. 2005). Taken as true, the Kestens' factual allegations do state a claim for breach of contract under the theory that certain obligations under the contract were assigned to Ocwen, so the court will deny Ocwen's motion to dismiss Count III.

IV.   Illinois Consumer Fraud Act

Count IV of the amended complaint alleges that Ocwen and Freddie Mac violated ICFA by "engag[ing] in unfair and deceptive acts and practices." (Am. Comp. ¶ 66.) Under ICFA, it is unlawful to misrepresent, conceal, suppress or omit any material fact in the course of any trade or commerce "with intent that others rely upon the concealment, suppression or omission of such material fact." 815 ILCS 505/2. To state a claim under ICFA, a plaintiff must allege "(1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a course of

conduct involving trade or commerce." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir. 2010).

The Kestens allege that defendant Ocwen violated ICFA in four ways: (1) by failing to adjust the interest rate and payment amount, (2) by overcharging plaintiffs, (3) by sending monthly statements misrepresenting the applicable interest rate and payment amounts, and (4) by unilaterally applying the overcharge as a principle reduction once it was discovered. (Am. Comp. ¶ 66.) The Kestens' allegations under ICFA are virtually the same allegations in its breach of contract claim. The ICFA claim should thus be dismissed as a redundancy, because the Supreme Court has held that "a breach of contract, without more, 'does not amount to a cause of action cognizable under [ICFA],'" and that ICFA thus "'should not apply to simple breach of contract claims.'" *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 233 (1995) (quoting *Goembiewski v. Hallberg Ins. Agency, Inc.*, 635 N.E.2d 452, 460 (Ill. App. 1994)); *see also Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 399 (7th Cir. 2011) ("When allegations of consumer fraud arise in a contractual setting, the plaintiff must prove that the defendant engaged in deceptive acts or practices distinct from any underlying breach of contract.").

In an attempt to overcome that rule, the Kestens contend that "the systematic imposition" of a breach of contract can state a claim under ICFA. (Dkt. No. 59, at 14.) *See People ex rel. Hartigan v. All Am. Aluminum & Constr. Co.*, 524 N.E.2d 1067, 1072 (Ill. App. 1988). The Seventh Circuit recently rejected a similar argument, noting that merely alleging "a 'widespread' or 'systematic' breach of contract does not suffice to state a claim for consumer fraud under ICFA." *Greenberger*, 631 F.3d at 400. To succeed on a theory of widespread fraud, a plaintiff must allege more than "a simple breach of contract multiplied over a prospective plaintiff class." *Id.* The Kestens have failed to do so here, so the court will dismiss their ICFA claim against Ocwen and Freddie

Mac.

## CONCLUSION

For the reasons stated above, Ocwen's motion to dismiss (Dkt. No. 41) is granted in part and denied in part. Counts I and IV against Ocwen are dismissed, but Counts II and III will stand. Freddie Mac's motion to dismiss (Dkt. No. 55) is granted in part and denied in part. Count IV against Freddie Mac is dismissed, but Counts I and III will stand. MERS's motion to dismiss (Dkt. No. 38) is moot and administratively terminated. The defendants' answer is due February 21, 2012. Counsel are to confer pursuant to Rule 26(f) and jointly file a Form 52 on or before March 6, 2012. The case is set for status and entry of a scheduling order, including a briefing schedule for the pending class certification motion (Dkt. No. 30), at 9:00 AM on March 8, 2012. The parties are encouraged to discuss settlement.

ENTER:

_____

JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: February 9, 2012